**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID C. COWGILL** | : | |
| | : | **Case No. 2:16-CV-00218** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Kimberly Jolson** |
| **WAL-MART STORES, INC., et al.,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on Defendant, Wal-Mart Stores, Inc.'s ("Wal-Mart") Motion for Summary Judgment (Doc. 18). For the reasons set forth below, the Court **DENIES** the Motion for Summary Judgment.

### I.      BACKGROUND

#### A.      Factual Background

Plaintiff David Cowgill operated a construction business, Custom Touch General Construction. (Cowgill Dep. 9-10). On February 13, 2014, Mr. Cowgill went to the branch of Defendant Wal-Mart Stores, Inc., located on Morse Road in Columbus in order to purchase a hitch lockout for one of his work trailers. (Compl. ¶ 1, Cowgill Dep. 16). He testified that when he began walking down the main aisle of the Wal-Mart, he noticed that there were "pallets out to stock the shelves that evening." (Cowgill Dep. 18). He passed by two of the pallets, and noted that some of the clear cellophane stretch wrap at the top of the pallet had been unwrapped. (Cowgill Dep. 19, 24-25). He did not see, however, that there was a flap of some of the cellophane on the floor of the aisle, in between the pallets. (Cowgill Dep. 19, 25). As he walked between the pallets, the stretch wrap attached to his legs, and, in Mr. Cowgill's words, "it

1

was like someone lassoed my feet and pulled backwards on me." (Cowgill Dep. 19). Mr. Cowgill fell—hard. As he fell, his hands hit the aisle cap, scattering goods across the aisle. (Cowgill Dep. 34). Then his whole body hit the floor at once, as though he belly-flopped. (Cowgill Dep. 34-35). He testified that he was in immediate pain, and that he quickly developed a knot the size of a golf ball on his knee. (Cowgill Dep. 35, 40).

After he fell, Mr. Cowgill turned around and saw that he had tripped on the cellophane stretch wrap. (Cowgill Dep. 24). He testified that the cellophane flap extended "[a]t least three feet off of [the] pallet," and when later questioned by a Wal-Mart attorney during a deposition, agreed that it may have been three to four feet. *Id.* The Wal-Mart attorney also probed whether the cellophane would have been visible to Mr. Cowgill had he been looking down:

Q.      Was the stretch wrap visible after you fell? You . . . were able to see it?

A.      Yes.

Q.      So as you stood up after you fell and looked back to see what you had tripped on; you looked and you saw a visible four-foot stretch of wrap?

A.      Yes. It was coming from the top part of the pallet, going down to the ground.

. . .

Q.      Do you think if you had been looking down prior to your fall, do you think you would have been able to see that stretch wrap?

A.      I don't know. . . . [I]f I looked straight down I might have seen it. Let me think. I come around the pallet like this to go through it. I guess if I look straight down right if I was in the middle of that, I possible would have seen it. Once I was beyond it and turned around and I'm looking this way at it, I could have seen it.

Q.      My question I guess is: Was there anything blocking you from seeing it prior to the fall?

A.      The pallet – because I came in the store over here and I'm walking down the main aisle this way and I rounded this pallet. As I'm rounding the pallet, this pallet is obstructing the view of this pallet. Like I said, if I was standing right in the middle of the

two pallets and took the time and looked down, yes, I might see that, but I did not see it as I was proceeding through there. (Cowgill Dep. 26-28).

After the accident, Mr. Cowgill drove himself to the hospital. (Cowgill Dep. 39). At the hospital, he was x-rayed, given pain medications, and was told to make an appointment with a physical therapist or family doctor. (Cowgill Dep. 42). In the following months, he performed physical therapy and was scheduled for a surgery, although he did not ultimately receive the surgery because he was uninsured. (Cowgill Dep. 56-57). Since the accident, he has been in ongoing pain and suffers from depression. (Cowgill Dep. 70, 73-74). And because he has been unable to safely perform the functions of his construction job, he has been unable to work. (Cowgill Dep. 10-11, 73-74).

## B.    Procedural Background

Mr. Cowgill filed a complaint in the Franklin County Court of Common Pleas on February 16, 2016. (Doc. 2) Wal-Mart removed the case to this Court based on diversity jurisdiction. (Doc. 1). Mr. Cowgill filed an amended complaint in this Court on July 12, 2016, seeking damages in excess of $75,000 for pain, suffering, mental anguish, medical expenses, and lost wages. (Doc. 9). Wal-Mart filed the pending motion for summary judgment on March 1, 2017. (Doc. 18).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences

must be drawn in the non-moving party's favor. *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

## III.    ANALYSIS

Under Ohio law, to prove negligence a plaintiff must prove: "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) breach of that duty, (3) a causal connection between the breach and injury, and (4) damages." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 264, 2015-Ohio-229, ¶ 23, 29 N.E.3d 921, 928 (Ohio 2015) (citing *Menifee v. Ohio Welding Prods., Inc.*, 472 N.E.2d 707 (Ohio 1984)). Normally, landowners have a duty to exercise ordinary care by keeping their premises in safe condition for business invitees. *See Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 122, 909 N.E.2d 120, 123 (Ohio 2009) (citing *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (Ohio 1986)). This duty includes warning invitees of "latent or hidden dangers." *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 80, 2003-Ohio-2573, ¶ 5, 788 N.E.2d 1088, 1089 (Ohio 2003) (quoting *Paschal v. Rite Aid* Pharmacy, 480 N.E.2d 474 (Ohio 1979)). However, "[w]here a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Id.* (quoting *Armstrong*, 788 N.E.2d 1088 at 1091). As the Supreme Court of Ohio noted in *Armstrong*, "[t]he rationale underlying [the open-and-obvious] doctrine is 'that the open and

obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" *Armstrong*, 788 N.E.2d 1088 at 1089.

When applicable, the open-and-obvious doctrine is a complete bar to negligence. *Id* at 1090. Therefore, when a danger is open and obvious, "summary judgment is generally appropriate because the duty of care necessary to establish negligence does not exist as a matter of law." *Lang*, 909 N.E.2d 120, 123. But "where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine." *Szerszen v. Summit Chase Condominiums*, 2010-Ohio-4518, ¶ 10, 2010 WL 3722637 at *3 (Ohio Ct. App. 2010).

Here, the question whether the cellophane stretch wrap was open and obvious to an objective observer requires submission to a jury. Wal-Mart first argues that the cellophane was open and obvious because Mr. Cowgill admitted in his deposition that he could have seen it had he looked down. (Doc. 18, 5-6). Wal-Mart correctly states the law: "A pedestrian's failure to avoid an obstruction because he or she did not look down is no excuse." *Lydic v. Lowe's Cos.*, 2002-Ohio-5001, ¶ 16, 2002 WL 31111820, at *3 (Ohio Ct. App. 2002) (citing *Jeswald v. Hutt*, 239 N.E.2d 37 (Ohio 1968)). But it misstates the facts: Mr. Cowgill's testimony indicates only that he *might* have seen the cellophane had he looked down as he was *right in the middle* of the two pallets. (Cowgill Dep. 26-27) And he further testified that the first pallet obstructed his view of the cellophane as he walked. (Cowgill Dep. 27)

Wal-Mart contends that Mr. Cowgill's admission that the cellophane was visible *after* the fall obviates Wal-Mart's duty to maintain safe premises for shoppers (Doc. 23, 3). In oral

argument, Wal-Mart also highlighted the portion of Mr. Cowgill's testimony where Mr. Cowgill conceded that, just as he was able to see the cellophane after he fell, a Wal-Mart employee also might have been able to see it. (Cowgill Dep. 28-29) At the outset, the Court notes that Mr. Cowgill has no personal knowledge as to what a Wal-Mart employee may or may not have seen, and it will not credit speculative testimony. Moreover, because the rationale for the open-and-obvious doctrine is that the "hazard itself serves as a warning," *Armstrong*, 788 N.E.2d 1088 at 1089, Wal-Mart's argument is temporally flawed. A rattlesnake's rattle might warn a hiker of the danger the snake poses, but if the snake strikes in silence and she spots it slithering away *after* being bitten, she cannot be said to have been meaningfully warned of the snake's presence. Nor would it be of any use to the bitten hiker to learn that someone else on the trail saw the offending snake after it struck. Construing the evidence most favorably to Mr. Cowgill, it is possible that an objective observer may not have been able to see the cellophane as he or she proceeded toward the pallets in time to react and change course.

Next, Wal-Mart argues that the characteristics of the cellophane were such that it should have been visible to the observer. (Doc. 18, 6-7). In support of this contention, Wal-Mart marshals *Lydic*, a case in which the Court of Appeals of Ohio held that a tree stump at a home improvement store was open and obvious because the store was adequately lit and the stump was visible in contrast to the store's light-colored concrete floor. *Lydic v. Lowe's Cos.*, 2002-Ohio-5001, ¶ 14, 2002 WL 31111820, at *3 (Ohio Ct. App. 2002). But here—unlike in *Lydic*—not only was the cellophane transparent, it was also, according to Mr. Cowgill's testimony, obscured by the first pallet. (Cowgill Dep. 25, 27).

A more analogous case is *Neinhaus v. Kroger Co.*, in which the Court of Appeals of Ohio, in determining that a puddle on the floor of a grocery store was not an open and obvious

danger, noted what it described as an "obvious" fact: transparent substances "may not be easily detected by unsuspecting shoppers." 2001 WL 66444 at *3 (Ohio Ct. App. Jun. 14, 2001). These factors suggest that reasonable minds could differ as to whether the cellophane was open and obvious.

Wal-Mart also contends that the cellophane must have been open and obvious because all parties agree that it was much larger than a six-inch-by-two-inch wooden wedge that was found to be open and obvious in *Norman v. BP America*, 1997 WL 703383 at *1-2 (Ohio Ct. App. 1997). But this argument misstates the inquiry: the size of an object is merely one of many factors a fact-finder uses to assess the openness and obviousness of a danger. Indeed, "'[t]he determination of whether a hazard is latent or obvious depends on the particular circumstances surrounding the hazard. In a given situation, factors may include lighting conditions, weather, time of day, traffic patterns, or activities engaged in at the time.' Thus, the determination requires a fact-intensive inquiry, and the crucial inquiry is whether 'a customer exercising ordinary care under the circumstances would have seen and been able to guard him or herself against the condition.'" *Olivier v. Leaf & Vine*, 2005-Ohio-1910, ¶ 31, 2005 WL 937928 at *6 (Ohio Ct. App. 2005) (internal citations omitted) (first quoting *Leis v. Dayton Med. Imaging II, Ltd.*, 1999 WL 960765 at *3 (Ohio Ct. App. 1999), then quoting *Kidder v. The Kroger Co.*, 2004-Ohio-4261, ¶ 7, 2004 WL 1802050 at *2 (Ohio Ct. App. 2004). Just as a large object might be obscured by darkness, *cf. Lydic v. Lowe's Cos.*, 2002-Ohio-5001, ¶ 14, 2002 WL 31111820, at *3 (Ohio Ct. App. 2002) (noting that a store's lighting was one factor in determining whether a hazard was open and obvious), so too is it possible here that a three-or-four foot piece of cellophane was not obvious to an objective observer because the object was transparent or because the observer's line of vision was broken.

Finally, Wal-Mart cites to *Armstrong*, a case in which the Supreme Court of Ohio held that a guardrail that caused the plaintiff to fall was open and obvious. But in *Armstrong*, it was photographs submitted by the parties led the Court to conclude that the hazard was "visible to all persons entering and exiting the store" and therefore was, as a matter of law, an open and obvious danger. *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 9, 83, 2003-Ohio-2573, ¶ 31, 788 N.E.2d 1088, 1092 (Ohio 2003). No such evidence exists here. And taken as a whole, the evidence is not so clearly in Wal-Mart's favor as to require this Court to hold that the cellophane was, as a matter of law, an open and obvious danger.

Accordingly, because there are genuine issues of material fact, Wal-Mart's motion for summary judgment must be denied.

## IV.    CONCLUSION

The Court **DENIES** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**


                                           **s/ Algenon L. Marbley**
                                           **ALGENON L. MARBLEY**
                                           **UNITED STATES DISTRICT JUDGE**


**DATED: October 26, 2017**